FT. WORTH & R. G. RY. CO. v. FLEMING.
(No. 6219.)

(Court of Civil Appeals of Texas. San Antonio.
May 7, 1919.)

1. CARRIERS ⚖➟228(5)—CARRIAGE OF LIVE
STOCK — EVIDENCE—SUFFICIENCY—CONJEC-
TURE.

In action for delay in delivery of shipment
of horses, shippers' testimony as to death of
mare from lockjaw that, "I suppose that this
was caused by placing the horses in this hot pen
and feeding them on this coarse sedge grass
hay," without evidence as to real cause of
mare's death, was insufficient basis for judgment
of damages, since contraction of lockjaw from
such source, being contrary to general rule,
should have been established by something more
than mere supposition.

2. EVIDENCE ⚖➟13 — JUDICIAL NOTICE —
LOCKJAW.

It is well known that tetanus, or lockjaw,
usually, if not invariably, arises from wounds
inflicted under certain peculiar circumstances.

3. APPEAL AND ERROR ⚖➟1177(7)—DISPOSI-
TION—REMAND.

Where plaintiff was led to believe by trial
courts that he had made a perfect case, appel-
late court in reversing for insufficient evidence
will remand case to give him opportunity to
produce legal testimony to sustain case, if he
can do so.

Appeal from Menard County Court; J. D.
Scruggs, Judge.

Action by J. S. Fleming against the Ft.
Worth & Rio Grande Railway Company.
Judgment for plaintiff, and defendant ap-
peals. Reversed and remanded, with direc-
tions.

Andrews, Streetman, Burns & Logue, of
Houston, J. L. Lockett, Jr., of Ft. Worth,
and Sam McCollum, of Brady, for appellant.
F. T. Neel, of Menard, and M. E. Black-
burn, of Junction, for appellee.

FLY, C. J. This is a suit instituted by ap-
pellee in the justice's court to recover dam-
ages to a shipment of horses. The justice of
the peace, a jury not being demanded, ren-
dered judgment in favor of appellee for all
he sought to recover, and upon appeal to the
county court a jury was again waived, and
the county judge rendered judgment in favor
of appellee for all he sued for.

Appellee was the only witness to sustain
the damages which he claimed arose from a
delay of the animals in Ft. Worth, Tex. He
swore that the horses had been consigned to
him at Vicksburg, Miss., but when he ascer-
tained at Ft. Worth that the animals were
required to be dipped for ticks, before they
could go to Vicksburg, he decided to change
the point of destination to Wells, Tex., and
eventually sent them there. He swore the

animals were not roughly handled, but were
damaged by being held at Ft. Worth for two
days. One mare died in Ft. Worth from
lockjaw, and appellee testified:

"I suppose that this was caused by placing
the horses in this hot pen and feeding them on
this coarse sedge grass hay."

She naturally was the highest priced ani-
mal in the lot of 38. He swore she was
worth $80 at Menard, where she began her
journey, and $75 at Ft. Worth, where the
sun's rays and sedge grass developed a case
of tetanus or trismus that culminated in
death. The other mares were worth only
$70 a head, and "they were worth about $2
to $2.50 per head less." He meant after they
had stayed in Ft. Worth two days.

No pretense was made by appellee that he
knew anything about the actual or market
value of his animals either in Menard or in
Ft. Worth, and no effort was made to show
any such actual or market value.

[1, 2] What really killed the mare was not
disclosed by the evidence. The hypothesis of
appellee that she died from lockjaw caused
by heat and food was not based on any
knowledge of any one, and had no scientific
basis, at least shown by the evidence. It
is well known that tetanus, or lockjaw, us-
ually, if not invariably, arises from wounds
inflicted under certain peculiar circumstanc-
es, and if, contrary to the general rule, heat
of the sun and coarse hay will produce it,
the exception should be established by some-
thing more than the supposition of a shipper
of horses.

As said by the Court of Civil Appeals at
Ft. Worth, in Railway v. Kerr, 184 S. W.
1058, where the evidence was that—

"If the cattle had reached Ft. Worth in good
condition they would have been worth on the
market from $1.50 to $2.50 per head more
than they were worth in the condition they were
in when they reached their destination," and
no knowledge of the market value was shown.
"Under the circumstances, the estimate of dam-
ages so given by the witness necessarily involv-
ed a mere guess, and the objection urged to it
should have been sustained."

As in that case, so in this, there was noth-
ing but conjecture as to the amount each of
the animals was injured by delay at Ft.
Worth. There was no basis for even an in-
telligent or reasonable guess.

The evidence showed that at least 24 hours
of the delay in Ft. Worth could not be laid
at the door of appellant, but was caused by
another railroad company, and yet all the
bad results of all the delay was charged to
appellant. It is apparent that this was un-
just.

[3] We are not disposed to render a judg-
ment in favor of appellant, from the fact
that appellee was led to believe by the two

trial courts that he had made a perfect case, and we think he should have an opportunity to produce legal testimony to sustain his case, if he can do so.

The judgment will be reversed, and the cause remanded for a trial upon the law as herein indicated.